UNITED STATE DISTRICT COURT FOR THE NORTHERN DISTRICT

|   |   |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA | ) ) CV 08 No._____ SI |
| PLAINTIFF AND RESPONDENT, | ) |
| v. | ) No. C148313 |
| Dario Drakes, | ) (PR) |
| DEFENDANT AND APPELLANT. | ) No. A111032 |
|  | ) |

FEDERAL HABEAS CORPUS Writ of Petition

2254

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
CLERK'S OFFICE
450 GOLDEN GATE AVE.
16th FLOOR
SAN FRANCISCO, CA 94102

Dario Drakes  V-91797
FCC-CCA  GG110L
P.O. Box 6900  1100 Bowling Road
Florence, Az. 85232

# TABLE OF CONTENTS

TABLE OF AUTHORITIES
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NECESSITY FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    I.     THE PROSECUTION'S CASE . . . . . . . . . . . . . . . . . . . . . . 6
    II.    THE DEFENSE'S CASE . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    I.     APPELLANT'S AGGRAVATED TERMS WERE
        IMPOSED IN VIOLATION OF THE SIXTH AND
        FOURTEENTH AMENDMENTS OF THE UNITED
        STATES CONSTITUTION, AS THEY WERE NOT
        JUSTIFIED BY ANY VALID "RECIDIVISM" FACTORS.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    II.    NONE OF THE UNCHARGED AGGRAVATING
        FACTORS, INCLUDING THE FACTOR FOUND TRUE
        BY THE JURY, COMPLIED WITH THE
        CONSTITUTIONAL GUARANTEES OF NOTICE AND
        DUE PROCESS, FOUND IN THE SIXTH AND
        FOURTEENTH AMENDMENTS OF THE UNITED
        STATES CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . 12
    III.   THE FINDINGS IN AGGRAVATION CREATED
        AGGRAVATED CRIMES THAT ARE VOID FOR
        VAGUENESS UNDER THE DUE PROCESS CLAUSE OF
        THE FOURTEENTH AMENDMENT. . . . . . . . . . . . . . . 15
    IV.   BLACK II'S SINGLE FACTOR RULE, AND THAT
        RULE'S INCORPORATION INTO THE HARMLESS
        ERROR ANALYSIS, VIOLATES APPELLANT'S RIGHT
        TO A JURY TRIAL AND DUE PROCESS UNDER THE
        SIXTH AND FOURTEENTH AMENDMENTS OF THE
        UNITED STATES CONSTITUTION. . . . . . . . . . . . . . . 17

V.     THE COURT'S DENIAL OF APPELLANT'S BATSON
       MOTION VIOLATED APPELLANT'S SIXTH AND
       FOURTEENTH AMENDMENT RIGHTS, AS THE
       RECORD SHOWS THAT THE PROSECUTOR'S
       REASONS FOR STRIKING SANDRA B.R. WERE
       PRETEXTUAL, AND THE TRIAL COURT ABDICATED
       ITS DUTIES OF SINCERE AND REASONED
       EVALUATION AND CRITICAL INQUIRY. . . . . . . . . . . 19
       A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
       B.     The Trial Court Was Not Owed Deference in the
              Absence of a Sincere and Reasoned Evaluation. . . . 21
       C.     The Prosecutor's Stated Reasons for Excusing Sandra
              B.R. Were Implausible. . . . . . . . . . . . . . . . . . . . . . . 22
VI.    THE ERRONEOUS EXCLUSION OF SPECIFIC BAD-ACT
       EVIDENCE, SHOWING THAT LENA TAYLOR HAD A
       PROPENSITY TO LIE, VIOLATED APPELLANT'S
       RIGHT TO CONFRONTATION UNDER THE SIXTH
       AMENDMENT OF THE UNITED STATES
       CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
VII.   THE CALIFORNIA SUPREME COURT SHOULD
       REVIEW THE COURT OF APPEAL'S DETERMINATION
       THAT  LENA TAYLOR'S MEDICAL RECORDS DID
       NOT CONTAIN DOCUMENTS MATERIAL TO THE
       DEFENSE UNDER THE DUE PROCESS AND
       CONFRONTATION GUARANTEES OF THE UNITED
       STATES CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . 26
VIII.  THE PROSECUTOR COMMITTED MULTIPLE
       INSTANCES PREJUDICIAL MISCONDUCT WHICH
       VIOLATED APPELLANT'S RIGHTS TO
       CONFRONTATION AND DUE PROCESS UNDER THE
       SIXTH AND FOURTEENTH AMENDMENTS OF THE
       UNITED STATES CONSTITUTION. . . . . . . . . . . . . . . . 28
       A.     The Prosecutor Shifted the Burden of Proof to the
              Defense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
       B.     The Prosecutor Alluded to Facts Not in Evidence to
              Bolster Lena Taylor's Testimony and Placed the
              Burden on the Defense to Disprove Such "Facts." . . 29
       C.     The Prosecutor Vouched for Prosecution Witnesses.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
       D.     The Prosecutor Presented Facts in His Opening

Statement That He Had No Reason to Believe Would
Be Supported by Jerold Serrell's Testimony at Trial.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

E.    The Prosecutor Drew Inferences in His Closing
Argument Not Supported by Jerold Serrell's
Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

IX.    DEFENSE COUNSEL'S FAILURE TO OBJECT TO
PROSECUTORIAL MISCONDUCT CONSTITUTED
INEFFECTIVE ASSISTANCE OF COUNSEL IN
VIOLATION OF THE SIXTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES
CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

X.    THE COMBINED ERRORS PREJUDICED APPELLANT'S
RIGHT TO A FAIR TRIAL. . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

WORD COUNT CERTIFICATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

## CASES

*Almendarez-Torres v. United States* (1998) 523 U.S. 224 . . 2, 3, 10-12, 18

*Apprendi v. New Jersey* (2000) 530 U.S. 466 . . . . . . . . . . . . 10, 11, 13, 15

*Barragan v. Superior Court* (2007) 148 Cal.App.4th 1478 . . . . . . . . . . 3, 13

*Batson v. Kentucky* (1986) 476 U.S. 79 . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Blakely v. Washington* (2004) 542 U.S. 296 . . . . . . . . . . . . . . . . . . . . . . . 10

*Bouie v. City of Columbia* (1964) 378 U.S. 347 . . . . . . . . . . . . . . . . . . . . 18

*Chambers v. Mississippi* (1973) 410 U.S. 284 . . . . . . . . . . . . . . . . . . . . . . 35

*Cole v. Arkansas* (1948) 333 U.S. 196 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cunningham v. California* (2007) __ U.S. __, 127 S,Ct, 856 . . 2, 3, 10, 11,
15, 17-19, 36

*Darden v. Wainwright* (1986) 477 U.S. 168 . . . . . . . . . . . . . . . . . . . . . . . 28

*Davis v. Alaska* (1974) 415 U.S. 308 . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Dutton v. Evans* (1970) 400 U.S. 74 . . . . . . . . . . . . . . . . . . . . . . 29, 31-33

*Ex Parte Travis* (Ala. 2000), 776 So.2d 874 . . . . . . . . . . . . . . . . . . . . . . 25

*Gautt v. Lewis* (9th Cir. 2007) 489 F.3d 993 . . . . . . . . . . . . . . . . . . . . . . 14

*In re Hess* (1955) 45 Cal.2d 171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Oliver* (1948) 333 U.S. 257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Winship* (1970) 397 U.S. 358 . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Keeler v. Superior Court* (1970) 2 Cal.3d 619 . . . . . . . . . . . . . . . . . . . . . 13

*Kolender v. Lawson* (1983) 461 U.S. 352 . . . . . . . . . . . . . . . . . . . . . . . 4, 15

*Miller-El v. Dretke* (2005) __U.S. __, 125 S.Ct. 2317 . . . . . . . . . 22, 23, 25

*Neder v. United States* (1999) 527 U.S. 1 . . . . . . . . . . . . . . . . . . . . . 14, 19

*Olden v. Kentucky* (1988) 488 U.S. 227 . . . . . . . . . . . . . . . . . . . . . . . . 26

*O'Sullivan v. Boerckel* (1999) 526 U.S. 838 . . . . . . . . . . . . . . . . . . . . . 2, 4

*Parle v. Runnells* (9th Cir. 2007) __ F.3d __, 2007 WL 2936652. . . . . . . 35

*Pennsylvania v. Ritchie* (1987) 480 U.S. 39 . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Black* (2007) 41 Cal.4th 799 (*Black II*) . . . . . . . . 3, 10, 11, 17, 18

*People v. Carlson* (1974) 37 Cal.App.3d 349 . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Daggett* (1990) 225 Cal.App.3d 751 . . . . . . . . . . . . . . . . . . . . . 33

*People v. Frye* (1998)18 Cal.4th 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Fuentes* (1991) 54 Cal.3d 707 . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Gonzalez* (1990) 51 Cal.3d 1179 . . . . . . . . . . . . . . . . . . . . 28, 29

*People v. Hammon* (1997) 15 Cal.4th 1117 . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Hill* (1998) 17 Cal.4th 800 . . . . . . . . . . . . . . . . . . . . . . . . . 28, 33

*People v. Johnson* (2003) 30 Cal.4th 1302 . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Marshall* (1996) 13 Cal.4th 799 . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Sandoval* (2007) 41 Cal.4th 825 . . . . . . . . . . . . . . . . 3, 13-16, 19

*People v. Silva* (2001) 25 Cal.4th 345 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Smith* (2005) 35 Cal.4th 334 . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Verona* (1983) 143 Cal.App.3d 566 . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Webb* (1993) 6 Cal.4th 494 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Wheeler* (1978) 22 Cal.3d 258 . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*People v. Wheeler* (1992) 4 Cal.4th 284 . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Purkett v. Elem* (1995) 514 U.S. 765 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rogers v. Tennessee* (2001) 532 U.S. 451 . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Strickland v. Washington* (1984) 466 U.S. 668 . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Bagley* (1985) 473 U.S. 667 . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Jordan* (9th Cir. 2002) 291 F.3d 1091 . . . . . . . . . . . . . . . 15

*United States v. Weatherspoon* (9th Cir. 2005) 410 F.3d 1142 . . . . . . 31, 32

*Washington v. Recuenco* (2006) __U.S.__, 126 S.Ct. 2546 . . . . . . . . 14, 19


**STATUTES**

28 United States Code section 1257(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

28 United States Code section 2254(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Evidence Code section 352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Evidence Code section 787 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Penal Code section 12022.5, subdivision (a) . . . . . . . . . . . . . . . . . . . . 4, 5, 9

Penal Code section 240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Penal Code section 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Penal Code section 243, subdivision (e)(1) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Penal Code section 245, subdivision (a)(2) .......................... 4

Penal Code section 246.3 ........................................ 4

Penal Code section 273.5, subdivision (a) .......................... 4

Penal Code section 417, subdivision (a)(2) .......................... 4

Penal Code section 422 .......................................... 4

Penal Code section 459 .......................................... 4

Penal Code section 6 ........................................... 13

Penal Code section 646.9, subdivision (a) .......................... 4

Penal Code section 667.5, subdivision (b) .......................... 4

Vehicle Code section 40000.5 .................................. 26

**CONSTITUTIONS**
California Constitution, Article I, section 28 ....................... 25

United States Constitution, Fourteenth Amendment ... 2, 9, 12, 13, 15, 17-
19, 27-29, 33

United States Constitution, Sixth Amendment . 2, 9, 12, 13, 17, 19, 25-28,
31-33

**RULES**
California Rules of Court, rule 4.421(b) .................... 2, 11, 13

California Rules of Court, rule 8.504 .......................... 37

California Rules of Court, rule 8.508 .......................... 4

vii

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | No. _____ |
| ) | |
| Plaintiff and Respondent, ) | |
| ) | |
| v. ) | Appeal No. |
| ) | A111032 |
| DARIO DRAKES ) | |
| ) | Alameda County |
| Defendant and Appellant. ) | Superior Court |
| ) | No. C148313 |

### PETITION FOR REVIEW

TO THE CHIEF JUSTICE AND THE HONORABLE ASSOCIATE
JUSTICES OF THE CALIFORNIA SUPREME COURT:

Defendant and appellant DARIO DRAKES ("appellant") hereby
petitions for review of the unpublished decision of the Court of Appeal,
First Appellate District, Division Four, filed on October 15, 2007. A copy
of this decision is appended as Attachment A. Appellant sought rehearing
in the Court of Appeal, which was denied on November 6, 2007. (See
Attachment B.) This petition presents the following important questions of
statewide significance and constitutional magnitude for the Court's
resolution:

1

## QUESTIONS PRESENTED[1]

1.      Do *Cunningham v. California* (2007) __ U.S. __, 127 S,Ct, 856, and *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 239-247, 118 S.Ct. 1219, 140 L.Ed.2d 350, permit the trial judge to sentence defendant to the upper term based in part on the trial judge's finding that the defendant's prior performance on probation or parole was unsatisfactory (California Rules of Court, Rule 4.421, subds. (b)(2)--(b)(5))?  This question is currently before this Court in *People v. Towne*, review granted July 14, 2004, S125677, supplemental briefing ordered, February 7, 2007.

2.      Is a defendant's right to notice and due process under the Sixth and Fourteenth Amendments of the United States Constitution violated when the trial judge sentences defendant to the upper term based in part on victim vulnerability where that factor was found true by the jury but was never alleged in the information; where the defense received notice of the factor more than half-way through trial, and never received notice regarding the count to which the factor pertained; where the aggravating factor was not promulgated by the legislature; and where the jury was not instructed regarding the definition of victim vulnerability?

3.      As an element of an aggravated offense, is victim vulnerability void for vagueness?

///

---

[1] In addition to the questions presented, appellant has included other issues in the argument portion of this petition solely to exhaust state remedies for federal habeas corpus purposes. (See 28 U.S.C. §§ 1257(a) and 2254(b); *O'Sullivan v. Boerckel* (1999) 526 U.S. 838.)

*18.*

*Page 6 of 6*

## NECESSITY FOR REVIEW

Review is respectfully urged based, in part, on this Court's grant of review and request for supplemental briefing in *People v. Towne*, review granted July 14, 2004, S125677, supplemental briefing ordered, February 7, 2007. Because this Court's decision in *People v. Black* (2007) 41 Cal.4th 799 (*Black II*) did not address the applicability of the *Almendarez-Torres* exception to many aggravating factors, including those relied by the judge in this case, it would be appropriate for this Court to give further guidance to the Courts of Appeal.

Review is also appropriate because neither *Black II* nor *People v. Sandoval* (2007) 41 Cal.4th 825 address the important constitutional question of notice of factors in aggravation. At least one California appellate court has opined that "it now appears that to satisfy procedural due process, an aggravating fact must be charged in the accusatory pleading." (*Barragan v. Superior Court* (2007) 148 Cal.App.4th 1478, 1483, rev. denied June 13, 2007.) The First District Court of Appeal, Division Four, however, has rejected this notion, instead finding that the jury's finding with respect to victim vulnerability – a factor not charged in the information-- provided a valid aggravating factor.

Third, review of the constitutionality of aggravating factors such as "victim vulnerability" is appropriate where this Court has itself observed that it "rests on a somewhat vague or subjective standard. . . ." (*Sandoval*, 41 Cal.4th at 840.) Because aggravating factors must be viewed under *Cunningham* as elements of an aggravated offense, the United States Constitution requires that they be defined with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

3

*(Kolender v. Lawson* (1983) 461 U.S. 352, 357.)

Finally, appellant raises other issues in the argument portion of this petition solely to exhaust state remedies for federal habeas corpus purposes, pursuant to rule 8.508. (See 28 U.S.C. §§ 1257(a) and 2254(b); *O'Sullivan v. Boerckel* (1999) 526 U.S. 838.)

## STATEMENT OF THE CASE

On September 28, 2004, the District Attorney for the County of Alameda filed an information charging appellant with stalking between March 15, 2004 and March 22, 2004 (count 1, Pen. Code sec. 646.9, subd. (a)); corporal injury to a child's parent on March 15, 2004 (count 2, Pen. Code sec. 273.5, subd. (a)); criminal threats on March 15, 2004 (count 3, Pen. Code sec. 422); discharge of a firearm with gross negligence on March 15, 2004 (count 4, Pen. Code sec.246.3); exhibiting a firearm on March 15, 2004 (count 5, Pen. Code sec. 417, subd.(a)(2)); criminal threats on March 19, 2004 (count 6, Pen. Code sec. 422); first degree residential burglary on March 22, 2004 (count 7, Pen. Code sec. 459); assault with a firearm on March 22, 2004 (counts 8 and 9, Pen. Code sec. 245, subd. (a)(2)); battery on March 16, 2004 (count 10, Pen. Code sec. 243, subd. (e)(1)); and criminal threats on March 22, 2004 (count 11, Pen. Code sec. 422). The information also alleged that appellant personally used a firearm in the commission of counts 8 and 9 (Pen. Code sec. 12022.5, subd. (a)), that appellant had two prior felony convictions, and that he served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b).

4

(CT63-71.)[2]

A jury trial commenced on April 6, 2005. (CT123.) On April 25, 2005, the jury convicted appellant of stalking (count 1), first degree residential burglary (count 7), assault with a firearm (counts 8 and 9) and criminal threats (count 11). With respect to Count 2, the jury convicted appellant of lesser included offenses of assault (Pen. Code sec. 240), battery (Pen. Code sec. 242) and battery against a person who is the parent of defendant's child (Pen. Code sec. 243, subd. (e)(1)). (CT 226.) The jury also found that appellant had personally used a firearm within the meaning of Penal Code section 12022.5, subdivision (a) in the commission of counts 8 and 9.

Pursuant to the prosecution's motion, the trial court dismissed the allegations of appellant's priors. (2RT476.) The court also considered two probation revocation petitions, revoking appellant's probation in one case, and terminating it in another. (2RT482; 2RT490.) On July 26 the court sentenced appellant to a total of 16 years and 4 months in state prison. (CT304.)

Appellant filed a timely notice of appeal on August 3, 2005. (CT314.) The Court of Appeal affirmed the judgment below in an unpublished opinion filed on October 15, 2007. (See Attachment A.) Appellant's petition for rehearing was denied on November 6, 2007. (See Attachment B.).

---

[2] Citations to the Clerk's Transcript are denoted "CT," followed by the page number. Citations to the Reporter's Transcript are denoted "RT," preceded by the volume number and followed by the page number. Citations to the Augmented Reporter's Transcript of Voir Dire are denoted "VDRT," followed by the page number.

## STATEMENT OF FACTS

### I.    THE PROSECUTION'S CASE

Dario Drakes –the appellant in this case – and Lena Taylor broke up in February or mid-March of 2004. (2RT254; 2RT298.) They had a four-year-old son together. (2RT254.) As of March 15, 2004, appellant still had the keys to Lena Taylor's apartment. (1RT174.)

On March 15, 2004, at around 11:10 at night, Lena Taylor and her sister, Marlo Stewart, were returning to Taylor's apartment complex. (1RT 51, 174-75.) They were on their way to see their mother, who also lived in the complex, when appellant came out of Taylor's apartment. (1RT52, 175.) He was shouting angrily and trying to pull Taylor into her apartment. Stewart pulled the other way. Appellant punched Taylor in the chest. Taylor went into her mother's apartment. (1RT54-55, 178-79.) Appellant yelled angrily from outside and kicked the security door to Taylor's mother's apartment, denting it. (1RT61, 62, 183, 187.) Taylor and Stewart testified that they saw appellant waiving a gun during this episode, and then heard a gunshot when appellant went out of sight. (1RT65-67, 186, 189.) Taylor and Stewart both called the police. (1RT66, 185.) The responding police officer saw that Taylor had a bruise under her left arm and a red mark on her chest, and that the security screen on the front door was damaged. (1RT43, 149.)

On March 16, 2004, Taylor went to Ace Hardware to change the locks for her apartment. (1RT190.) In the parking lot, appellant appeared, angrily opened the driver's side door, pushed her over, and got in. (1RT192.) Taylor grabbed her phone but appellant took it and got out of the car. Taylor yelled, appellant threw her phone back, and walked away, yelling. (1RT193-94.) Taylor contacted the police. (1RT194-95; 1RT83.)

6

The police officer who spoke to Taylor at the scene noted that Taylor appeared upset, but did not observe any injuries. (1RT84, 86). The officer did not find appellant. (1RT86.)

On March 20, 2004 at around 2:20 a.m. Taylor called police to her apartment. (1RT89; 1RT199.) Officer Bacon listened to some messages on Taylor's voice mail, featuring an angry male voice. (1RT90-91.) Taylor did not have the recorded messages at the time of trial (2RT259), and admitted that she could not remember the messages "word for word". (2RT278; 2RT259.) She claimed the messages were from appellant and included threats on her life. (1RT195-200.)

On March 22, 2004, at about 3:20 a.m., Taylor was asleep in her bedroom with Jerome Taylor (no relation). (1RT97; 1RT200-01.) They awoke suddenly to the sound of the bedroom window breaking. (1RT98-99; 1RT202.) At trial, Lena Taylor testified that the shooter was leaning in through the window with his upper body, and that she recognized appellant's face. (1RT203.) She said that appellant stated he was going to kill her, pointed the gun at her, and then fired two shots. (1RT205-06.) Taylor said that she had told police that appellant was the shooter. She acknowledged, though, that in a taped statement to police, the police never asked if she had seen appellant. (2RT277.) In the taped statement, when police asked, ". . . Did you see him shoot?" Taylor had responded, "I – I saw – I saw part of his coat and his hand." (2RT266, Defense Exh. A.) Jerome Taylor testified that he had not been able to see anything about the person who broke Lena Taylor's window– that it was like a black shadow. (1RT103.)

When the police arrived, they found two bullet holes on the side of the room opposite the broken window. (1RT117, 2RT272.) There were no

bullet holes in the wall behind the head of the bed. (2RT272.) Police
interviewed Lena and Jerome Taylor. (1RT129-30, 135.) So far as patrol
officer Sanchez knew, no one researched Jerome Taylor's background.
(1RT124-25.)    Police also interviewed Lena Taylor's neighbor, Jerold
Serrell. (1RT130-34.)

Jerold Serrell testified that on March 22, at about 3:20 a.m., he heard
a noise and looked in the direction of the driveway to see a person standing
in area of the stairs and fence close to Lena Taylor's bedroom window.
(1RT144.) He was unable to identify anything about the person at the time,
nor did he ever identify the shooter. (1RT156, 157.) Serrell admitted that
he had not wanted to come and testify because "snitches get shot."
(1RT149-151.) Lena Taylor testified that Serrell had told her he had seen a
man stand on the fence, break the window with a gun, and shoot.
(1RT214.)

## II.    THE DEFENSE'S CASE

Appellant's girlfriend, Shavone Pickett testified that she and
appellant had spent every night together on the week in which the charged
incidents allegedly occurred. (2RT301-02.) She recalled that on March 15,
2004, she and appellant spent the night with appellant's aunt, for whom
appellant worked as a home health aid. (2RT299.) Appellant's aunt
suffered from Lupus, a condition requiring her to take medications,
including pain pills. (2RT316) Although her condition sometimes caused
her to get "twisted up" (2RT320-21, 322), appellant's aunt testified that
appellant and Shavone Pickett had stayed with her on March 15, 2004.
(2RT313-14.) Appellant's aunt believed that appellant had assisted her at
night throughout the month of March, 2004. (2RT320.)

At the time of the charged offenses, Shavone Pickett knew that

8

appellant was working with his cousin Lonnie, fixing up investment properties. (2RT307.) Lonnie Lewis testified that appellant had been working for him around the week of March 15 to March 22. (2RT325-26.) Lewis stated that appellant would usually show up on Monday and miss Thursday, Friday, and Saturday. (2RT327.)

Derrick Donaldson, the father of Lena Taylor's older child, testified that Lena Taylor was a habitual liar. (2RT334.) He stated that if she couldn't have someone, she would "go through real extremity" to control that person, and would lie about the person. (2RT334.) Donaldson had known both appellant and Lena Taylor since they were kids, and was friends with appellant at the time of trial. (2RT333, 335.) Donaldson testified that appellant had no gun and wouldn't "sho[o]t up" Lena Taylor's house. (2RT336-37.)

## ARGUMENT

## I. APPELLANT'S AGGRAVATED TERMS WERE IMPOSED IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AS THEY WERE NOT JUSTIFIED BY ANY VALID "RECIDIVISM" FACTORS.

The trial court imposed the aggravated term for assault with a firearm (count 8) and also for the Penal Code section 12022.5 personal use enhancement attached to that count. The Court of Appeal found no violation of appellant's Sixth Amendment right to a jury on the basis that two factors relied on by the trial court were valid. First, the Court of Appeal found that the trial court's finding that appellant's "prior performance on probation or parole was unsatisfactory" (2RT383-84) fell

9

within the "recidivism" exception to the jury trial requirement, set forth in *Almendarez-Torres*, 523 U.S. 224. (Attachment A at 25.) This is error and should be reviewed by this Court.

*Black II* held that the numerosity and increasing seriousness of the defendant's prior convictions fell within the prior-conviction exception set forth in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 476 and *Almendarez-Torres*, 523 U.S. 224. (*Black II*, 41 Cal.4th at 819-20.) This Court has not yet ruled on the status of other recidivist-type factors, such as performance on probation or parole. That question is pending before the Court in *People v. Towne*, S125677. As appellant explains below, the California Supreme Court was wrong in interpreting *Almendarez-Torres* to extend to facts such as numerosity and increasing seriousness. In any event, a review of Supreme Court precedent makes clear that *Black II*'s holding cannot be further broadened to include the factor of performance on probation or parole, at issue in this case.

The rule originally set forth in *Apprendi* reflects two longstanding tenets of criminal jurisprudence: the right to a jury trial on the truth of every element and the right that the charging document contain every necessary fact. (*Blakely v. Washington* (2004) 542 U.S. 296, 301-02.) The exception to this rule, set forth in *Almendarez-Torres*, is limited only to the fact of a prior conviction. Unlike other facts, prior convictions were produced with the full panoply of rights that attended a jury trial. (See *Apprendi*, 530 U.S. at 488 (noting the procedural safeguards attached to the fact of a prior conviction).)

In *Cunningham*, the United States Supreme Court clarified the narrow scope of the *Almendarez-Torres* exception, rejecting Justice Kennedy's notion that recidivism-related factors pertaining to a defendant

10

need not be proven to a jury. In his dissent in *Cunningham*, Justice
Kennedy had opined that the Court could distinguish between sentencing
enhancements based on the nature of the offense, where the *Apprendi*
principle would apply, and sentencing enhancements based on the nature of
the offender, where it would not. Kennedy cited to the Rules of Court, rule
4. 421(b), which made this distinction. (*Cunningham*, 127 S.Ct. at 872 (dis.
opn. of Kennedy, J).)

Nearly all of the "facts relating to the defendant" that Justice
Kennedy mentioned, to which rule 4.421(b) refers, <u>are recidivism related
factors</u>, including the increasing seriousness of prior convictions and
unsatisfactory performance on probation or parole. Yet <u>the Cunningham
majority rejected Kennedy's attempt to distinguish these factors</u>:

> *Apprendi* itself, however, leaves no room for the bifurcated
> approach Justice Kennedy proposes. See 530 U.S., at 490, 120
> S.Ct. 2348 (' [A]ny fact that increases the penalty for a crime
> beyond the prescribed statutory maximum must be submitted
> to a jury, and proved beyond a reasonable doubt.' (emphasis
> added)).

(*Cunningham*, 127 S.Ct. at 869, fn. 14.)

Clearly, then in rejecting Justice Kennedy's approach, the
*Cunningham* court indicated that factors such as numerosity and increasing
seriousness of convictions did not fall within the prior conviction exception
of *Almendarez-Torres*. Rather, the prior conviction exception is
specifically limited to the fact of a prior conviction.

In the present case, *Black II* should not be expanded to find that the
*Almendarez-Torre*s exception encompasses appellant's performance on
probation or parole. The finding that appellant's prior performance on
probation was unsuccessful is a fact that is not inherent in any jury verdict.

Rather, the trial court had to go beyond the jury's verdict of appellant's prior conviction to determine that (a) appellant had been on probation, and (b) his performance was unsatisfactory. Accordingly, those findings are not constitutionally valid under the *Almendarez-Torres* exception.

## II.   NONE OF THE UNCHARGED AGGRAVATING FACTORS, INCLUDING THE FACTOR FOUND TRUE BY THE JURY, COMPLIED WITH THE CONSTITUTIONAL GUARANTEES OF NOTICE AND DUE PROCESS, FOUND IN THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

The Court of Appeal also determined that imposition of the aggravated term was constitutional because it was based, in part, on a jury finding that the victim was particularly vulnerable. (Attachment A at 25.)

On day four of a seven-day trial, the prosecutor submitted a document titled "Aggravated Term Notification," which alleged factors in aggravation, but did not tie those factors to any specific charge. (See CT143-44.) The jury was asked to make some findings in aggravation on the verdict forms (CT247-266), however the jury was not given any definitional instructions pertaining to such findings. (See 2RT 351-82.) With respect to count 8 – the offense of assault with a firearm– the jury found true that the victim was particularly vulnerable. (CT260.) In imposing the aggravated term for count 8, the trial court also made the finding in aggravation that the victim was vulnerable. (2RT383-84.) Under these circumstances, the jury finding was without support in California law and in violation of appellant's rights to notice and due process under the Sixth and Fourteenth Amendments of the United States Constitution.

First, in California, the "circumstances in aggravation" contained in

rule 4.421(b) of the Rules of Court are a judicial creation. The Legislature
has not enacted them and the prosecution did not and cannot charge them in
the information or by separate notice. Therefore, the trial court has no
authority to submit them to a jury. *Apprendi* makes clear that these
"circumstances in aggravation" are equivalent to elements of a crime. (See
*Apprendi*, 530 U.S. at 483 fn. 10, 494 fn. 19.)   Only the Legislature may
create crimes and the elements on which a jury may be instructed. (*Keeler v.*
*Superior Court* (1970) 2 Cal.3d 619, 631, superseded by statute on other
grounds, as stated in *People v. Carlson* (1974) 37 Cal.App.3d 349, 355
("the power to define crimes and fix penalties is vested exclusively in the
legislative branch") ; see also Pen. Code § 6.) Thus, until or unless the
Legislature enacts aggravating factors by statute and creates a procedure for
submitting them to a jury, the courts have no authority to submit them to a
jury.

Further, none of the factors in aggravation, including the factor
found true by the jury, were charged in the information. Thus, appellant's
sentence for an aggravated crime, where the aggravated crime was not
charged, violated appellant's right to notice and due process under the Sixth
and Fourteenth Amendments. "No principle of procedural due process is
more clearly established than that notice of the specific charge, and a
chance to be heard in a trial of the issues raised by that charge, if desired,
are among the constitutional rights of every accused in a criminal
proceeding in all courts, state or federal." (*Cole v. Arkansas* (1948) 333
U.S. 196, 201; see also *Barragan*, 148 Cal.App.4th 1478, 1483.)

Indeed, in *Sandoval*, this Court noted a potential problem in a case
where the aggravating factors "were not part of the charge and were not
directly at issue in the trial." (*Sandoval*, 41 Cal.4th at 839.):

13

> <u>Defendant thus did not necessarily have reason – or the</u>
> <u>opportunity– during trial to challenge the evidence supporting</u>
> <u>these aggravating circumstances</u> unless such a challenge also
> would have tended to undermine proof of an element of an
> alleged offense.

(*Id.*)(emphasis added). Similarly, in this case, appellant was not provided
with notice of any aggravating factors until trial was more than half-way
over. Even then, none of the factors were tied to any particular charge.
Accordingly, appellant did not have the opportunity to formulate his
defense to address the factors in aggravation. (See *Gautt v. Lewis* (9th Cir.
2007) 489 F.3d 993, 1009 (observing that, while non-charging documents
can provide notice of the prosecution's <u>theory</u> of the case, <u>there is no</u>
<u>authority for the proposition that a non-charging document can provide</u>
<u>notice of the charges themselves</u>).)

This case is <u>not</u> like *Washington v. Recuenco* (2006) __U.S.__, 126
S.Ct. 2546 or *Neder v. United States* (1999) 527 U.S. 1. It is not "a case in
which the trial court fails to instruct the jury on an element of the crime but
where the parties were aware during trial that the element was at issue."
(*Sandoval*, 41 Cal.4th at 839.)[3] Thus, "the reviewing court cannot
necessarily assume that the record reflects all the evidence that would have
been presented had aggravating circumstances been submitted to the jury."
(*Id.*) This consideration alone should be fatal to the state's claims of

_____

[3] In *Neder*, the defendant was charged filing a tax return "which he
does not believe to be true and correct as to every material matter." The
judge failed to instruct the jury on the element of materiality. (*Neder*, 527
U.S. at 16.) In *Recuenco*, the defendant was charged with "assault . . . with
a deadly weapon, to-wit: a handgun." (*Recuenco*, 126 S.Ct. at 2549.) The
trial court failed to submit to the jury the enhancement allegation that the
defendant was armed with a firearm. (*Id.*)

harmlessness. (See *United States v. Jordan* (9th Cir. 2002) 291 F.3d 1091, 1096-97 (where quantity of drugs, not alleged in the indictment, resulted in sentence enhancement, error was not harmless because it was impossible to know what evidence the defense might have been able to assert with proper notice).)

### III.    THE FINDINGS IN AGGRAVATION CREATED AGGRAVATED CRIMES THAT ARE VOID FOR VAGUENESS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

Regardless of what they are called, California's aggravating factors are functionally elements of an aggravated offense. (*Cunningham*, 127 S.Ct at 864; see also *Apprendi*, 530 U.S. at 494 [a fact that exposes a defendant to a greater punishment than the jury's verdict is an element of a greater offense]. ) As elements of aggravated crimes, they must conform with a basic principle of due process: "that a criminal statute must give fair warning of the conduct that it makes a crime." (*Rogers v. Tennessee* (2001) 532 U.S. 451, 457.) The factor in aggravation must "define the [aggravated] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender v. Lawson* (1983) 461 U.S. 352, 357.)

Under California's DSL, however, the factors in aggravation were not created with these principles in mind, nor do they comport with the basic requirements of due process.   In fact, some aggravating circumstances "rest[] on a somewhat vague or subjective standard. . . ." (*Sandoval*, 41 Cal.4th at 840.) As an example, the California Supreme

15

Court referred to the aggravating factor found initially by the jury in this case, and reiterated by the trial court: that the "victim was particularly vulnerable." (*Id.*) The Court also observed:

> It has been recognized that, because the rules provide criteria intended to be applied to a broad spectrum of offenses, they are "framed more broadly than" criminal statutes and necessarily "partake of a certain amount of vagueness which would be impermissible if those standards were attempting to define specific criminal offenses."

(*Id.* [citation omitted].)

In this case, the jury was essentially asked to find appellant guilty of the aggravated crime of assault-with-a-firearm-on-a-person-who-was-particularly-vulnerable, but was not instructed on the element of "particular vulnerability." Nor has the legislature provided any guidance as to what "particular vulnerability" might involve. Similarly vague are most of the other factors in aggravation cited by the trial court in this case: committing a crime in a manner that indicated "planning or sophistication;" taking advantage of "a position of trust or confidence;" engaging in conduct that indicated he was a "serious danger to society;" and having "unsatisfactory" performance on probation or parole. The only factor in aggravation that was not vague impermissibly relied on an element of the offense: use of a weapon.

Accordingly, although the jury made a finding that the victim was "particularly vulnerable," the imposition of the upper term in this case was unconstitutional. That and other factors in aggravation in this case were void for vagueness, and could not support the imposition of the upper term.

///

///

16

IV.    **BLACK II'S SINGLE FACTOR RULE, AND THAT RULE'S
        INCORPORATION INTO THE HARMLESS ERROR
        ANALYSIS, VIOLATES APPELLANT'S RIGHT TO A JURY
        TRIAL AND DUE PROCESS UNDER THE SIXTH AND
        FOURTEENTH AMENDMENTS OF THE UNITED STATES
        CONSTITUTION.[4]**

In *Cunningham*, the Court stated, "the middle term prescribed in
California's statutes, not the upper term, is the relevant statutory maximum.
. . ." (*Cunningham v. California* (2007) __ U.S.__, 127 S.Ct. 856, 873.)
Nevertheless, *Black II* held that "if one aggravating circumstance has been
established in accordance with . . . constitutional requirements . . ., the
upper term sentence is the 'statutory maximum.'" (*Black II*, 41 Cal.4th at
813.)   Thus, with respect to which term is relevant for purposes of
determining appellant's right to a jury trial under the federal constitution,
the California Supreme Court's holding is in conflict with *Cunningham*.

The California Supreme Court's single-factor rule is such an
unforeseeable change in California sentencing law, it violates due process
to apply it retroactively to appellant's case.   In justifying the single-factor
rule, the California Supreme Court viewed the determinate sentencing law
("DSL") as having two functions: (1) to provide the conditions under which
the maximum term was raised from the middle term to the upper term; and
(2) to provide considerations whereby the judge would exercise its
discretion in selecting an appropriate term, once the maximum term was
established.  (See *Black II*, 41 Cal.4th at 815-16.)   In this two-step analysis,
the right to a jury trial would apply only to the first step.   It would not apply
to any discretionary decisions made under the second step.   (*Id.*)   However,

---

[4] This issue and those that follow are presented to exhaust
appellant's state law remedies for purposes of federal habeas corpus.

the California Supreme Court essentially acknowledged that this two-step view of the DSL was a novel one: *"Although the DSL does not distinguish between these two functions, in light of Cunningham it is now clear that we must view the federal constitution as treating them differently."* (*Id.* at 816)(emphasis added).

If, until *Cunningham*, the law did not require the distinction made by the California Supreme Court, then it cannot be assumed that judges operating under the pre-*Cunningham/Black II* DSL followed this two-step approach. It cannot be assumed that the trial judge relied on one valid factor to find that the maximum available sentence was the upper term, rather than relying on a mixture of factors to make this determination. Accordingly, the retroactive application of the California Supreme Court's single-factor rule would violate appellant's Fourteenth Amendment due process rights to notice, foreseeability, and the right to fair warning. (See *Bouie v. City of Columbia* (1964) 378 U.S. 347, 352-54; *Rogers v. Tennessee* (2001) 532 U.S. 451.)

The Court's ruling in *Black II* also violates appellant's right to notice and due process in another respect. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175, citing *In re Oliver* (1948) 333 U.S. 257, 275.) But, under the single factor rule set forth in *Black II*, whether or not a defendant has a right to a jury trial on aggravating factors cannot be determined until the trial court has rendered a decision as to whether a single factor exists that would not require a jury trial. Only after a trial court found that there were no factors in aggravation falling within the *Almendarez-Torres* exception or

18

implicit in the jury's verdict would the defendant then know that he would receive a jury trial on aggravating factors.

Finally, in *Sandoval*, the California Supreme Court applied the *Chapman* harmlessness analyses provided for in *Neder*, 527 U.S. 1 and *Recuenco*, 126 S.Ct. 2546. However, it also incorporated into that analysis the single-factor rule, discussed above. Thus, under *Sandoval*, unless every factor in aggravation is deemed not to be harmless, any *Cunningham* error will be deemed harmless. (*Sandoval*, 41 Cal.4th at 839.) For the same reasons that appellant has argued that the single-factor rule was constitutionally unsound, appellant also contends that the Court was wrong to incorporate the single-factor rule into the harmless error analysis.

**V.  THE COURT'S DENIAL OF APPELLANT'S BATSON MOTION VIOLATED APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS THE RECORD SHOWS THAT THE PROSECUTOR'S REASONS FOR STRIKING SANDRA B.R. WERE PRETEXTUAL, AND THE TRIAL COURT ABDICATED ITS DUTIES OF SINCERE AND REASONED EVALUATION AND CRITICAL INQUIRY.**

**A.  Background**

The prosecutor's use of a peremptory challenge to remove a prospective juror on the ground of group bias violated appellant's rights under the Sixth and Fourteenth Amendments of the United States Constitution to trial by an impartial jury drawn from a representative cross-section of the community. (*Batson v. Kentucky* (1986) 476 U.S. 79, 89; *People v. Wheeler* (1978) 22 Cal.3d 258, 276- 277.)

Appellant's trial counsel made a Batson/Wheeler motion, contending that the only reason the prosecutor sought to excuse prospective juror

19

Sandra B.R. was because she was an African-American woman.[5] (VDRT149-150.)   Sandra B.R. had not initially been peremptorily stricken by the prosecutor.  She was on a panel the court was about to swear in when some of the jurors on the panel asked about hardships.  (VDRT133.)  After some of those jurors were excused, another two jurors were questioned. (VDRT141, 144.)  The prosecutor struck one of the jurors that had been on the panel he had previously accepted (VDRT144), and next struck Sandra B.R.  (VDRT148.)  Defense counsel made a Batson motion.  (VDRT148.)

Defense counsel argued that there was no conceivable reason for the prosecution to excuse Sandra B.R. other than the fact that she was also an African-American woman.  The court found a prima facie case of discrimination. (VDRT150.)  The prosecutor stated that after one of the jurors, Cristopher T., got excused for hardship, he did not like the make-up of the jury.  (VDRT151-52.)  He explained that Sandra B.R. "might have been good for me.  But I did not like her responses when I look at them again.  When she was asked about reasonable doubt, she was most definitely if I didn't prove my case. [Sic.]  She was just emphatic about her answers." (VDRT152.)  He emphasized that he was African-American himself, and that his peremptory challenge to Sandra B.R. had nothing to do with her being African-American.  (*Id.*)

When the court asked, "what did it have to do with?"  (*id.*), the

_____

[5] Trial counsel only stated that he brought the motion pursuant to *People v. Wheeler, supra.* (VDRT149.)  At the time of the motion, however, it was settled law that "a state challenge under *Wheeler* also states a federal claim under *Batson*." (*People v. Smith* (2005) 35 Cal.4th 334, 346 fn. 2.)

prosecutor reiterated that he thought Sandra B.R. "might be too strong of a personality for this jury" with Cristopher T. gone. "I thought [Sandra B.R.] might have been too strong a personality, period. And her answering the defense questions the way she did, that kind of swung me and I kicked her." (*Id.*)    Finally, the prosecutor argued that it was not appropriate to base a Batson motion on just one person and that he had left another African American on the jury. (VDRT153-54.)

The trial court denied the Batson motion without explanation. (VDRT154.)

### B.    The Trial Court Was Not Owed Deference in the Absence of a Sincere and Reasoned Evaluation.

The trial judge's findings regarding pretext "'largely will turn on evaluation of credibility,'" and "'a reviewing court ordinarily should give those findings great deference.'" (*People v. Johnson* (2003) 30 Cal.4th 1302, 1312, quoting *Batson*, 476 U.S. 79, 98, fn. 21.) However, deference is owed "only when the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror." (*People v. Silva* (2001) 25 Cal.4th 345, 385-86, quoting *People v. Fuentes* (1991) 54 Cal.3d 707, 720.) Here, the trial court did not make a sincere and reasoned attempt to evaluate the prosecutor's explanations. Beyond asking, "what did it have to do with?" the trial court did not press the prosecutor. Nor did the trial court give any explanation for its denial of the Batson motion. There is no way to know whether the trial court found the prosecutor's explanation plausible, or whether, instead, it erroneously adopted the prosecutor's incorrect legal arguments that Batson did not apply where only one juror was challenged, where the prosecutor himself was African-

21

American, and where there was another African-American empaneled. Under these circumstances, the Court of Appeal should not have deferred to the trial court.

### C. The Prosecutor's Stated Reasons for Excusing Sandra B.R. Were Implausible.

The prosecutor's credibility is called into question on appeal in a Batson case where an asserted reason for a peremptory challenge is implausible or incorrect on the record. (*Purkett v. Elem* (1995) 514 U.S. 765, 768 (per curiam).) Here, a review of the record reveals that the prosecutor's explanation for striking Sandra B.R. was both incorrect and implausible.

The prosecutor was incorrect that Sandra B.R. was emphatic in her response to defense counsel's question about reasonable doubt. In fact, when defense counsel asked, "After you heard the evidence and you had a reasonable doubt, how would you vote?" Sandra B.R. responded, "I don't know. I would have to hear the evidence." When defense counsel reiterated the question, Sandra B.R. answered, "If I had a reasonable doubt based on a clear understanding of the evidence, I would have to vote not guilty." Yet, there was nothing about this answer that should have caused the prosecutor concern "when [he] look[ed] at [it] again." (VDRT152.)

Sandra B.R.'s other responses to defense counsel's questions looked no different from responses given by other jurors who were <u>not</u> stricken by the prosecution. This makes the the prosecutor's justification appear pretextual. (See *Miller-El v. Dretke* (2005) __U.S. __, 125 S.Ct. 2317, 2325.) When defense counsel asked Sandra B.R. if she presumed the defendant innocent before the trial began, she said, "absolutely."

22

(VDRT126.) She also used the word "absolutely" after being questioned about her neutrality in the case:

> Q:  Do you lean in any direction at this time as to how you would like the case to come out?
> A:  No.
> Q:  Wait until you hear the evidence?
> A:  Absolutely.

(VDRT127.)

Neither of these "emphatic" responses distinguished Sandra B.R. from many of the other prospective jurors on voir dire. Time and again prospective jurors had used words like "of course," or "absolutely," in response to questions from counsel or the court. Annette M., asked whether she had a problem with the district attorney's burden of proof beyond a reasonable doubt responded, "No, not at all." (VDRT52.) Asked if he had any quarrel with the presumption of innocence, Richard C, answered, "No. That's the basis of our law." (VDRT50.) Monte H. responded, "Yes, of course," when asked if he would require proof beyond reasonable doubt. (VDRT66.) When asked if he could be fair on all counts, Baltazar M. responded, "Absolutely." (VDRT115.)[6] Throughout the course of voir dire, the prosecutor had not taken issue with the use of such emphatic language, as might have been expected if it were truly a red flag to him. (See *Miller-El* ___ U.S. ___, 125 S.Ct. at 2328 (if prosecutor had been genuinely concerned about the type of response that was the basis for the peremptory strike, he would have questioned other jurors who had given

---

[6] Although these jurors were peremptorily stricken by the defense, they remain relevant to show the prosecutor's lack of concern regarding "emphatic" answers. (*Miller-El*, ___ U.S. ___, 125 S.Ct. at 2328, fn. 4.)

similar responses).)

In fact, several jurors were empaneled who had given similar "emphatic" answers. Juror 12 gave a number of emphatic responses to defense counsel's questions. Asked if she could be fair and impartial, Juror 12 replied, "Absolutely." (VDRT93.) Asked if she would have any trouble voting not guilty if she had reasonable doubt, Juror 12 responded, "No, not at all." (*Id.*) Asked if she could vote guilty if the district attorney proved his case beyond a reasonable doubt, she said, "Absolutely." (VDRT94.) When defense counsel asked if Juror 5 would have any hesitation voting not guilty if the district attorney did not prove its case beyond a reasonable doubt, Juror 5 answered "No, not at all." (VDRT113.) When defense counsel asked Juror 9 about the presumption of innocence, Juror 9 replied, "That's how I would want it applied to me." (VDRT70.) When the prosecutor asked Juror 6, who worked at a hospital, if she could set aside her encounters with patients who had been victims of domestic violence, Juror 6 replied, "Absolutely." (VDRT84.) When defense counsel asked if she would have any hesitation acquitting the defendant if the prosecutor failed to prove the charges, Juror 6 replied, "No, if its not been proven, no." (VDRT85.)

Along with the prosecutor's alleged concern regarding Sandra B.R.'s "emphatic" answers, the prosecutor contended that he thought Sandra B.R. had too strong a personality for the jury after prospective juror Christopher T. was excused. The prosecutor's almost complete failure to question Sandra B.R. undercuts any claim of purported concerns about her personality. The prosecutor asked her one question, "Can you be fair?" and did not continue questioning after she responded, "Yes, I can." (VDRT126.) "[T]he state's failure to engage in any meaningful voir dire

24

examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." (*Miller-El* ___ U.S. ___, 125 S.Ct. at 2328, quoting *Ex Parte Travis* (Ala. 2000), 776 So.2d 874, 881.)

## VI.  THE ERRONEOUS EXCLUSION OF SPECIFIC BAD-ACT EVIDENCE, SHOWING THAT LENA TAYLOR HAD A PROPENSITY TO LIE, VIOLATED APPELLANT'S RIGHT TO CONFRONTATION UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

The court erroneously excluded testimony from two witnesses who could have testified about occasions on which Lena Taylor had lied. Christine Hoang, a social worker who had been involved with a Welfare and Institutions Code section 300 petition for Lena Taylor's children, would have testified that Lena Taylor had falsely denied using cocaine before testing positive for the drug in December 2004 and January 2005. (1RT229.)   An officer who had arrested Lena Taylor for driving under the influence of alcohol would have testified that Lena Taylor had told him she hadn't been drinking, when she had a blood-alcohol content of .21. (1RT230.)  Both witnesses were excluded. (1RT229-31.)

In a criminal trial, evidence of "nonfelony conduct involving moral turpitude should be admissible to impeach a criminal witness. . . ." *People v. Wheeler* (1992) 4 Cal.4th 284, 295.  Evidence Code section 787's prohibition on the use specific-act evidence to prove a trait of character relevant to the credibility of a witness did not apply.  (Cal. Const. Art. I, § 28.)  Rather, the trial court could exclude such evidence only if it was more prejudicial than probative.  (Evidence Code § 352.)

Evidence of Lena Taylor's past lies was highly probative of her

credibility. The evidence demonstrated that Lena Taylor had no
compunction about lying, even to a peace officer – misconduct that can
actually be charged as a misdemeanor. (Veh. Code § 40000.5.) The ability
to introduce evidence impeaching Lena Taylor's truthfulness was essential
to appellant's defense. Only Lena Taylor's testimony identified appellant
as the perpetrator of burglary, assault with a deadly weapon, and criminal
threats. Her testimony was also essential to prove almost all of the
allegations underlying the stalking conviction.

The trial court's erroneous exclusion of evidence of Lena Taylor's
lies also violated appellant's right to confront witnesses against him under
the Sixth Amendment of the United States Constitution. (*Davis v. Alaska*
(1974) 415 U.S. 308, 318; *Olden v. Kentucky* (1988) 488 U.S. 227, 230,
232.)

## VII. THE CALIFORNIA SUPREME COURT SHOULD REVIEW THE COURT OF APPEAL'S DETERMINATION THAT LENA TAYLOR'S MEDICAL RECORDS DID NOT CONTAIN DOCUMENTS MATERIAL TO THE DEFENSE UNDER THE DUE PROCESS AND CONFRONTATION GUARANTEES OF THE UNITED STATES CONSTITUTION.

During the course of trial, the trial court conducted an in camera
review of mental health records pertaining to Lena Taylor. (1RT222.)
Appellant's trial counsel had argued that the records could be relevant
because they pertained to treatment not long after the incidents that were
alleged at trial, and because they might reveal problems that would be
relevant to Taylor's credibility as a witness. (1RT5, 7-8.) The trial court
concluded that the records did not contain any documents relevant to the
defense and ordered that they remain sealed. (1RT222-23.) The Court of

Appeal agreed.  (Attachment A at 13.)

The right to a fair trial under the due process clause of the Fourteenth Amendment requires the government to give the accused favorable evidence that is material to guilt or punishment, even where the evidence is subject to a state privacy privilege. (*People v. Webb* (1993) 6 Cal.4th 494, 518; *Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 57.)  Evidence is favorable if it is directly exculpatory or can be used for purposes of impeachment. (*United States v. Bagley* (1985) 473 U.S. 667, 676.)  Further, the right to confrontation, guaranteed by the Sixth Amendment of the United States Constitution, includes a defendant's right "to expose to the jury facts from which jurors. . . could appropriately draw inferences relating to the reliability of the witness." (*Davis*, 415 U.S. at 318.)  Thus, when a defendant seeks privileged information during trial, a "trial court may be called upon, as in *Davis*, to balance the defendant's need for cross-examination with the state's policies the privilege is intended to serve." (*People v. Hammon* (1997) 15 Cal.4th 1117, 1127.) [7]

Appellant respectfully requests this Court to conduct an in camera review to determine whether the Court of Appeal properly ruled.

///

///

///

----

[7] In *Hammon*, although the California Supreme Court found no constitutional right to disclosure of records that are protected by psychotherapist-patient privilege <u>prior</u> to trial, it acknowledged that a defendant's right to confrontation during trial is more broad.  (See *id.*) Because, in appellant's case, the confidential records were reviewed during trial, appellant need not address the problems with *Hammon*'s reasoning regarding pretrial discovery.

## VIII.  THE PROSECUTOR COMMITTED MULTIPLE INSTANCES PREJUDICIAL MISCONDUCT WHICH VIOLATED APPELLANT'S RIGHTS TO CONFRONTATION AND DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

The prosecutor committed misconduct on multiple occasions that violated appellant's rights to confrontation or due process under the Sixth and Fourteenth Amendments of the United States Constitution. Furthermore, the "prosecutor's ... intemperate behavior violate[d] the federal Constitution" because it "comprise[d] a pattern of conduct 'so egregious that it infect[ed] the trial with such unfairness as to make the conviction a denial of due process.'" (*People v. Hill* (1998) 17 Cal.4th 800, 819 (Citations omitted); *Darden v. Wainwright* (1986) 477 U.S. 168, 181.)

### A.  The Prosecutor Shifted the Burden of Proof to the Defense.

The Due Process Clause of the United States Constitution places on the prosecution the burden of proving every element of the offenses charged beyond a reasonable doubt.  (U.S. Const., 14th Amend.; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1215.)  It is thus misconduct for a prosecutor "to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements.  [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 829-30 quoting *People v. Marshall* (1996) 13 Cal.4th 799, 831.)

In this case, the prosecutor improperly shifted the burden of proof to the defense, stating:

> It must be reasonable.  There is no reasonable doubt here.
> There is no other conclusion that you can reach based on the

> defendant's case, based on what was presented to you by
> those defense witnesses. That's not reasonable doubt. That
> testimony lacks all credibility. The defense was phony, false,
> fabricated and a work in progress.

(2RT424.)

The prosecutor thus improperly suggested that the jury had to

conclude a lack of reasonable doubt "based on the defendant's case."

### B. The Prosecutor Alluded to Facts Not in Evidence to Bolster Lena Taylor's Testimony and Placed the Burden on the Defense to Disprove Such "Facts."

In order to counter evidentiary weaknesses in Lena Taylor's

testimony, the prosecutor alluded to facts not in evidence, thereby violating

appellant's right to confrontation under the Sixth Amendment of the United

States Constitution. (See *Dutton v. Evans* (1970) 400 U.S. 74, 95 (conc.

opn. of Harlan, J.).) The prosecutor also improperly shifted the burden to

the defense to affirmatively disprove the existence of such evidence,

violating appellant's right to due process. (See U.S. Const. 14th Amend;

*Winship*, 397 U.S. at 364; *Gonzalez*, 51 Cal.3d at 1215.)

Arguing against the defense contention that Lena Taylor's testimony

was scripted, the prosecutor said:

> Yes, I do know the answers to the questions. I've read the
> police reports. So, yes, I'm going to ask you what happened
> next, what happened next. .... so we can get you the whole
> story. There's nothing made up. Because if it was made up,
> he would have showed you that it was made up. If she had
> said something different from what she said on the date that
> these things happened, he would have showed you that. He
> didn't.

(2RT455.) By saying that he knew the answers to the questions, had read

the police reports, and that there was nothing made up, the prosecutor gave

unsworn testimony that Lena Taylor's testimony was consistent with the
police reports.  The prosecutor also improperly shifted the burden of proof
to the defense, essentially asking the jury to presume Lena Taylor's
credibility unless the defense could prove that Lena Taylor had made prior
inconsistent statements.

The prosecutor also attacked defense counsel's use of a portion of
Lena Taylor's taped statement, where police asked her if she had seen the
person shooting on March 22, 2004.  Defense counsel had argued that Lena
Taylor's answer -- "I saw part of his coat and his hand"– indicated that she
had not actually seen the face of the shooter.  The prosecutor stated, "Now
why didn't he– if she didn't say it was Dario Drakes, he would have brought
that to you.  You see what I'm saying?  He's leaving out stuff and hoping
that you go down that tangent." (2RT456.)  The jury had already heard Lena
Taylor's testimony that, at some point,  she had told police that the shooter
was Dario Drakes.  (2RT277.)  By arguing that the defense would have
proven otherwise if Taylor had <u>not</u> identified appellant as the shooter to
police, the prosecutor turned the burden of proof on its head.  The
prosecutor's argument also suggested that, but for defense counsel's
"leaving out stuff," the jury would have heard proof that Taylor identified
appellant as the shooter to police.  The implication was that Taylor's taped
statement, heard in its entirety, corroborated Taylor's testimony.  This went
beyond the evidence and violated appellant's right to confront evidence
against him.

///

///

///

///

30

### C.    The Prosecutor Vouched for Prosecution Witnesses.

The prosecutor vouched for the veracity of prosecution witnesses. (See 2RT404 (arguing Marlo Stewart had "no reason to lie. ... She's telling the truth."); 2RT416 (arguing Jerome Taylor didn't know appellant "so why would he lie?  He wouldn't."); 2RT400 (stating that Lena Taylor has "no reason to lie here. . . . No credible defense testimony that she lied").) Worst, the prosecutor took advantage of the exclusion of evidence of past lies to argue Lena Taylor's veracity. Seeking to counter the testimony of Taylor's first child's father, Donaldson, who characterized Taylor as a habitual liar (2RT334), the prosecutor argued, "He's the only person that called her a liar. The only person." (2RT434.) The prosecutor also stated, "She could have been making up all kinds of stuff, but she didn't. She was consistent. The only thing she has done wrong was her choice of men. That's the only thing she has done wrong." (2RT414.) In reality, the prosecutor knew of evidence that contradicted these arguments. But for the trial court's erroneous exclusionary ruling, the defense would have presented evidence that Taylor had lied about her cocaine use to a social worker and had lied about her alcohol consumption to a law enforcement officer who arrested her for driving under the influence.

Such vouching constituted misconduct because, in violation of the Sixth Amendment's Confrontation Clause, it may suggest that the prosecutor knows facts not in evidence that support the witness's story. ((U.S. Const., 6th Amend.; *United States v. Weatherspoon* (9th Cir. 2005) 410 F.3d 1142, 1147-48; *Dutton,* 400 U.S. at 95; accord *People v. Frye* (1998)18 Cal.4th 894, 971.) Further, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the

31

Government's judgment rather than its own view of the evidence."
(*Weatherspoon*, 410 F.3d at 1147-48.)

### D. The Prosecutor Presented Facts in His Opening Statement That He Had No Reason to Believe Would Be Supported by Jerold Serrell's Testimony at Trial.

Without knowing what the testimony would be, the prosecutor asserted in his opening statement that on March 22, 2004, Lena Taylor's neighbor, Jerold Serrell, "saw the defendant on top of that fence." (1RT37.) Actually, Serrell would testify that he saw the back of a person who appeared to be on the stairs outside of Lena Taylor's apartment (1RT146), and that he was not able to identify who the person was. (1RT157.)

Shortly before stating that Serrell had seen the defendant on top of the fence, the prosecutor told the jury, "I don't know what he's going to say when he gets in here because he's scared. . . ." (1RT37.) By then stating that Serrell would tell the jury he had seen appellant on top of the fence, the prosecutor was preparing the jury to disbelieve Serrell to the extent that Serrell did not testify as the prosecutor wished. The prosecutor's opening statement guaranteed that, whatever Serrell's testimony, the prosecutor "ha[d] the evidence in by his own statements." (1RT95.) This violated appellant's Sixth Amendment right to confront the evidence against him. (See U.S. Const., 6th Amend.; *Dutton*, 400 U.S. at 95.)

### E. The Prosecutor Drew Inferences in His Closing Argument Not Supported by Jerold Serrell's Testimony.

While no evidence suggested that Serrell had been able to identify the shooter on March 22, 2004, the prosecutor asked the jury to "infer" that fact, arguing:

> And he says I can't identify anyone. . . . Well, then why are
> you scared?  Because he knows who did it. . . .

(2RT419; see also 420.)  The court overruled the defense's objections.
(2RT419, 420.)

A prosecutor who urges the jury to draw an inference not supported
by the evidence "raise[s] the possibility the jury would assume [the
prosecutor] had some undisclosed knowledge" to support the inference.
(*Hill*, 17 Cal.4th at 829.)  Thus, the prosecutor becomes an unsworn
witness, thereby violating the defendant's Sixth Amendment right to
confrontation.  (See U.S. Const., 6th Amend.; *Dutton*, 400 U.S. at 95.)

## IX.  DEFENSE COUNSEL'S FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

As the Court of Appeal observed, trial counsel failed to object to a
number of the instances of misconduct raised above.  In addition to the
misconduct above, trial counsel failed to object when the prosecutor misled
the jury by commenting on the defendant's failure to present evidence
which was actually excluded by the trial court.  This was objectionable
misconduct.  (See *People v. Daggett* (1990) 225 Cal.App.3d 751, 757-758;
*People v. Verona* (1983) 143 Cal.App.3d 566, 570.)  For example, seeking
to counter defense counsel's argument that police had not investigated the
background of Jerome Taylor, Lena Taylor's guest on March 22, 2004, to
determine whether the shooter might have had a connection with him rather
than Lena Taylor, the prosecutor argued:

> Jerome Taylor.  No investigation into Jerome Taylor . . . .  He
> could have been shady.  Why didn't you ask any questions if

you thought he was shady? He didn't.

(2RT457-58.) In fact, the prosecutor knew that Jerome Taylor did indeed have a shady background. The prosecutor had obtained an *in limine* ruling, preventing trial counsel from delving into Jerome Taylor's history of arrests. (CT95, 1 RT14.)

Defense counsel also failed to object to the prosecution's exploitation of the exclusion of evidence of Lena Taylor's past lies to bolster Lena Taylor's credibility. Seeking to counter the testimony of Taylor's first child's father, Donaldson, who characterized Taylor as a habitual liar (2RT334), the prosecutor argued, "He's the only person that called her a liar. The only person." (2RT434.) In fact, but for the trial court's erroneous exclusionary ruling, the defense would have presented evidence that Taylor had lied about her cocaine use to a social worker and had lied about her alcohol consumption to a law enforcement officer who arrested her for driving under the influence. (1RT229-31.)

Finally, defense counsel also failed to renew his objection to the prosecutor's attack on the integrity of defense counsel when the prosecutor argued that, "the defense is basically trying to fog this all up for you. That's what they do. Send you on tangents." (2RT459.)

To the extent that the Court of Appeal suggested that trial counsel forfeited any of the above prosecutorial misconduct arguments for failure to object, appellant was deprived of effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. (See *Strickland v. Washington* (1984) 466 U.S. 668, 685-686.)

An attorney who fails to object to rampant misconduct and thereby forfeits not only his client's right to immediate relief at trial in the form of

timely admonitions but also his right to relief on appeal is not "reasonably competent."

## X.    THE COMBINED ERRORS PREJUDICED APPELLANT'S RIGHT TO A FAIR TRIAL.

Where the combined effect of individual harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 294, 302-303; *Parle v. Runnells* (9th Cir. 2007) __ F.3d __, 2007 WL 2936652.)  In this case, the trial court's erroneous exclusion of evidence of Lena Taylor's past untruthfulness was made worse by the prosecutor's improper argument that no one besides the father of her eldest child would question her truthfulness, and by the prosecutor's improper allusions to facts not in evidence to bolster Taylor's credibility. On top of this, the prosecutor shifted the burden of proof to the defense and then disparaged defense counsel, suggesting that the defense was withholding evidence that would fill various holes in the prosecution's case, speculated that Serrell actually knew appellant to be the March 22, 2004 shooter, and otherwise misleading the jury.  The errors in the present case, singly and in combination, denied appellant a fair trial, resulting in his convictions.  Reversal is required.

///
///
///
///
///
///
///
///

35

## CONCLUSION

Based on the foregoing, appellant respectfully requests that this Court grant the Petition for Review and reverse the judgment of conviction or, in the alternative, the sentence, to the extent it was tainted by the trial court's *Cunningham* error.

Dated: November 24, 2007.

Respectfully submitted

_____

SUSAN BURKE

Attorney for Defendant / Appellant

36

## WORD COUNT CERTIFICATION

I, Susan Burke, counsel for appellant, certify pursuant to the California Rules of Court that the word count for this document contains 9,329 words, excluding tables, proof of service, this certificate, and any attachment permitted under rule 8.504. This document was prepared in Word Perfect, and this is the word count generated by the program for this document.

I certify under penalty of perjury that the foregoing is true and correct. Executed in Hollister, California on May 25, 2007.


Signed:_____

SUSAN BURKE

Attorney for Appellant



## CALIFORNIA COURT OF APPEAL
### FIRST APPELLATE DISTRICT
### DIVISION FOUR

PEOPLE

v.

DARIO DRAKES

# FILED

A111032

Alameda County

Sup. Ct. No. C148313

MAR - 8 2007

Court of Appeal - First App. Dist.
**DIANA HERBERT**

By _____
DEPUTY

BY THE COURT:

"Appellant's Request for Reconsideration and Amended Application for Permission to Have Settled Statement Prepared in the Trial Court and Request for Augmentation" is granted in full.

The Alameda County Superior Court is ordered to conduct whatever proceedings are necessary to settle the record as to the matter described in said request.

Copies of the settled portion of the appellate record shall be transmitted to this Court and to appellate counsel by April 16, 2007.

Respondent's request for permission to file its late supplemental brief is granted and the clerk of this court is directed to concurrently file this order and the proffered brief.

On the court's motion, the due date for any supplemental reply brief is extended from March 12, 2007 to March 19, 2007.

Date: MAR - 8 2007

**RUVOLO, P.J.** P.J.

Court of Appeal, First Appellate District, Div. 4 - No. A111032
**S158518**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

DARIO DRAKES, Defendant and Appellant.

The petition for review is denied.

George, C.J., was absent and did not participate.

SUPREME COURT
FILED

JAN **3 0** 2008

Frederick K. Ohlrich Clerk

_____

Deputy

**BAXTER**
_____

Acting Chief Justice

# APPENDIX

# ATTACHMENT
# A

**Partial Transcript of Lena Taylor Statement to Officer Smith**

I:    Did you peek out the window and see that he was shoo

W:    I – I know that

I:    Did you see him shooting? No, no. I mean, it's very important – did you see him shoot?

W:    I, I saw his, I saw the, part of his coat

I:    Uh-huh (as in Yes)

W:    and his hand

# ATTACHMENT B

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 4



THE PEOPLE,
Plaintiff and Respondent,
v.
DARIO DRAKES,
Defendant and Appellant.

A111032
Alameda County No. C148313

**FILED**

NOV – 6 2007

Court of Appeal First App. Dist
DIANA HERBERT
By _____
                              Deputy

BY THE COURT:

The petition for rehearing is denied.

REARDON, P.J.

Date: _____                _____ P.J.

# PROOF OF SERVICE

RE:    People v. Drakes
       Case No. A111032
       Alameda County Superior Court No. 0148313

---

I, Susan Burke, do hereby certify as follows:

I am an active member of the State Bar of California and am not a party to the above-entitled action. My business address is 201-A McCray Street, # 239, Hollister, CA 95023. On the date set forth below I served a true copy of the attached PETITION FOR REVIEW on each of the following parties or interested persons herein, by placing same in envelopes addressed as follows:

Dario Drakes V91797
P.O. Box 2210
Susanville, CA 96127-2210

Court of Appeal, First Appellate
District, Division 4
350 McAllister Street
San Francisco, CA 94102-3600

First District Appellate Project
730 Harrison Street, Suite 201
San Francisco, CA 94107

Alameda County Superior Court
Office of the Clerk
1225 Fallon Street, Room 109
Oakland, CA 94612
ATTN: HON. CARLOS YNOSTROZA

Michael Wohlstadter, Esq.
488 Seventh Street
Oakland, CA 94607
(defense attorney)

Mark A. McCannon
Deputy District Attorney
1225 Fallon Street, Suite 900
Oakland, CA 94612

Office of the State Attorney General
455 Golden Gate Ave., Ste 1100
San Francisco, CA 94102

Each envelope was properly addressed and sealed, with the postage thereon fully prepaid, and placed in a United States Post Office mail box.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 26, 2007 in Hollister, California.

_____
Susan Burke

38

1   Name :  _Dario Drakes_
    C.D.C. #  _V91797_
2   Florence Correctional Center
    P.O. Box 6900
3   Florence, Arizona 85232-6900

4

5                **PROOF OF SERVICE BY PERSON IN STATE CUSTODY**

    STATE OF _California_                    CASE NO. _C148313_
6
    COUNTY OF _Alameda_                      ADDITIONAL NO. _A11132_
7
        I, the undersigned, do certify, declare and verify that I am over the age of
8   (18) eighteen years old, that I am incarcerated at the Florence Correctional Center
    in Florence, Arizona, that I am a party to the above-entitled cause, and that on
9   the day of _20_ , in the month of _May_ , the year _08_ , I served a true and
    complete copy of the following:
10  (                                                                          )
    (                                                                          )
11  (            _writ of habeas Corpus_                                       )
    (                                                                          )
12  (                                                                          )
    (                                                                          )
13
    [  V  ]      by depositing it in a institutional mailbox in a sealed envelope, or
14
    [    ]       by handing it to institutional staff in a sealed envelope, along with any
15  of the following.

16  [  ✔  ]      a Trust Account Withdrawl Order attached to it authorizing that the
    required postage be prepaid **in full**.
17
    [    ]       the required amount of actual U.S. Postage afford there to.
18
    [    ]       the above mentioned envelope was to be deposited in the United States
19  Mail pursuant to California Code of Regulations Section §3142 and §3165 to the
    following: (Please List the names and addresses of the persons served).
20  (                                                                          )
    (                                                                          )
21  ( _Dario Drakes  Florence Correctional_                                    )
    ( _Center P.O. Box 6900  Florence, Arizona_                                )
22  (                                              _85232-6900_ )
23  (                                                                          )

24      The intended place of mailing is the U.S Postal Office at Florence, Arizona.

25      I declare under penalty of perjury that the foregoing is true and correct.

26  Executed on this _20_ day of _May_ , 20 _08_ , in Florence, Arizona.

27  _Dario Drakes_                           _Dario Drakes_
28  Type or printed name(here)               Signature of person (here)

To: United States District Court

Due to the Out of State program serving my prison sentence in Arizona Per: My Haebeus Corpus, we do not have access to copy machines. This facility does not let us into the Legal Library on a regular basis. Rarely we can get copies of legal documents. At this time I can only send one copy.